## UNITED STATES DISTRICT COURT
### DISRICT OF CONNECTICUT

<table>
<tr><td>

MATTHEW MOCHARY,

                Plaintiff,

   v.

SETH BERGSTEIN,

                Defendant

</td><td>

Case No. 3:20-cv-01034 (VAB)

**Memorandum in Support of Motion to Dismiss**

October 23, 2020

</td></tr>
</table>

**MEMORANDUM IN SUPPORT OF DEFENDANT SETH BERGSTEIN'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED OR, IN THE ALTERNATIVE, FOR STAY OF PROCEEDINGS**

The matter before the Court claims ownership of property which the defendant submits is part of a marital estate currently being adjudicated in prior pending dissolution proceedings in Connecticut Superior Court. Pursuant to Fed. R. Civ. P. 12(b)(6), the defendant, Seth Bergstein ("Bergstein"), hereby respectfully moves to dismiss all counts and prayers for relief in the plaintiff, Matthew Mochary's ("Mochary"), July 22, 2020 Complaint [Doc. No. 1] for failure to state a claim upon which relief can be granted. In the alternative, Bergstein respectfully requests that this Court stay all proceedings to allow the family court to make its findings and rulings as to the property at issue. The plaintiff's claims concern the allegedly wrongful possession of a Jackson Pollack collage (the "Collage") that Bergstein maintains is unequivocally marital property. The disposition of the Collage, therefore, is a matter falling exclusively within the legal purview and jurisdiction of the Connecticut Superior Court in Bergstein's divorce proceedings. Because federal law plainly requires that federal courts abstain from interfering in—and, indeed, carve out an exception to federal jurisdiction regarding—domestic relations, this Court should not tread upon the traditional purview of the state family court.

## I.      Introduction

The basic question presented by the plaintiff to this Court is who owns the Pollack Collage. If it were a foregone conclusion that the plaintiff owned the Collage, this would be a relatively straightforward matter to be decided under this Court's diversity jurisdiction. Although the defendant has not yet filed his answer, it should come as no surprise that the ownership of the Collage which has been in his home since 2016 is in dispute. Still, but for one complicating factor, this would still be within the realm of cases that federal courts sitting in diversity can decide easily as a matter of course. That complicating factor – the prior pendency of divorce proceedings between the defendant and the plaintiff's sister – changes the analysis.

If the plaintiff is incorrect in his claims of ownership of the Collage, the most likely result is that the Collage is owned either by Bergstein or his soon to be ex-spouse or otherwise is property of the marital estate. As discussed more fully below, it is inarguably within the province and mandate of the state family court hearing the divorce to decide what property constitutes the marital estate. This would include in the first instance deciding what property is owned by the divorcing parties. The state family court is charged by statute to decide at least in part the very issue Mr. Mochary asks this court to decide: whether the Collage belongs to someone other than Mochary, including the very real possibility that it belongs to either or both of the divorcing spouses.

If not outright placing the dispute beyond this Court's diversity jurisdiction, the role of the Connecticut family court in disposing of marital assets counsels strongly in favor of this Court abstaining from such jurisdiction (at the very least until that court determines whatever property rights Bergstein and his soon to be ex-spouse have in the Collage). Failing to wait and moving forward to decide Mr. Mochary's claim of ownership presents the very real possibility of

conflicting rulings. Abstention, on the other hand, presents no prejudice to Mr. Mochary. To the extent he is correct that the Collage was loaned to and not otherwise the property of his sister, his interests would be fully protected in the divorce proceeding: Mochary's sister would have every incentive to disprove her ownership so as to not have the Collage included in the marital estate and possibly lessen her entitlement to distribution of other marital assets.

The determination of marital assets is a core domestic relations function and should be left to the state court. It presents either an exception to this Court's diversity jurisdiction or a strong reason for it to abstain from weighing in on the issue. The divorce proceedings have been pending for almost two years prior to the institution of this action and they should be allowed to continue without collateral attack by the brother of one of the parties. The facts as alleged in—and supporting documentation attached to—the plaintiff's complaint are not so compelling or convincing as to warrant deviating from the federal courts' one hundred sixty year old recognition that domestic relations matters are best left to state courts.

## II.     Relevant Factual Background

Divorce proceedings between the defendant Seth Bergstein and Alexandra Bergstein n/k/a Kasser ("Kasser") commenced in December 2018 and currently are pending in the Connecticut Superior Court in Stamford in a matter bearing docket number FST-FA-19-6039435-S. (A copy of the docket sheet from the Connecticut Judicial Information Service is appended hereto as Exhibit A. *See also* Complaint ¶17.) Prior to the breakdown of their marriage, Kasser and Bergstein resided in the family home located at 541 Lake Avenue in Greenwich, Connecticut. As alleged in Mochary's complaint in the instant action, since 2016 the Collage at issue in this replevin action has been at that same Greenwich home, which Kasser and Bergstein shared. (*Id*. at ¶¶15, 16.)

Mochary claims in the instant action both that he has owned the Collage *in toto* since 2012 (*id*. at ¶11) and that the Collage was "loaned" to Kasser, who was Bergstein's wife at the time (*id*. at ¶15). Attached as <u>Exhibit A</u> to the Complaint is a purported invoice from an auction house that is offered to show ownership of the Collage by Mochary's mother, Mary. (*Id.* at ¶8.)[1] Other than the bare averment of ownership by Matthew Mochary, the complaint does not provide any similar documentation indicating current ownership by Matthew Mochary or transfer of ownership from Mary Mochary. Similarly, although the complaint avers that the Collage was loaned to Kasser under certain conditions, the complaint does not make clear who made the loan (although the implication is that it was made by The Kasser Foundation, to which plaintiff alleges he and his mother had loaned the Collage for the purpose of "relending the [C]ollage for exhibition" (*Id*. at ¶13)). Nor does the complaint append or reference any documentation of the purported loan to Kasser. The question of ownership of the Collage and whether there is any merit to the contention that it was "loaned" or gifted to Kasser is very much at issue in both the instant case and in Kasser and Bergstein's pending divorce proceeding.

Since the filing of the instant action, the parties have reached a stipulation (Doc. No. 17) that preserves and protects the Collage, providing therein that it remain at a third party art storage facility "during the pendency of this litigation and/or until ownership of the Collage is adjudicated by this Court, or such other Connecticut court as designated by this Court." (*See* Stipulation at ¶3.) The parties have stipulated further that the Collage will not be moved from storage absent an order of this Court or such other Connecticut Court as designated by this Court. (*Id*. at ¶7.)

---

[1] Although the complaint alleges that the Collage was owned solely by Mary since 1978 as evidenced by the invoice (*see* Compl. ¶¶8,9), the invoice attached as Exhibit B lists two purchasers: Mary & Stephen Mochary. There is no explanation in the complaint as to how Mary gained sole ownership.

### III.    Law and Argument

#### A.  Legal Standard

When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must determine whether the plaintiff has stated a legally cognizable claim by making allegations that, if true, would show that the plaintiff is entitled to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'" (alteration in original)). The court takes all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015). Nevertheless, the tenet that a court must accept a complaint's allegations as true is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, supra, 550 U.S. at 555).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, supra, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, supra, 550 U.S. at 556).

#### B.  Federal courts lack jurisdiction over domestic relations issues like these.

In this case, Mochary has alleged that this court's jurisdiction is diversity jurisdiction. *See* Compl., ¶ 4 (citing 28 U.S.C. § 1332). For more than a century, federal courts in this country have

followed—formally or informally—the rule that they have no jurisdiction over domestic relations, particularly where their jurisdiction is rooted in diversity. The exception has its jurisprudential origin in *Barber v. Barber*, 62 U.S. (21 How.) 582, 16 L. Ed. 226 (1859), where the Supreme Court held that federal district courts had jurisdiction in a suit **to enforce** a separation and alimony decree in favor of a New York woman against her Wisconsinite ex-husband who had fled New York to avoid his obligations. In doing so, however, the court stated that federal courts have no jurisdiction in original divorce or alimony proceedings:

> Our first remark is—and we wish it to be remembered—that this is not a suit asking the court for the allowance of alimony. That has been done by a court of competent jurisdiction. The court in Wisconsin was asked to interfere to prevent that decree from being defeated by fraud.
> We disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony, either as an original proceeding in chancery or as an incident to divorce *a vinculo*, or to one from bed and board.

*Barber*, supra, 62 U.S. at 584. Similarly, in *In re Burrus*, 136 U.S. 586, 10 S. Ct. 850, 34 L. Ed. 500 (1890), the Supreme Court held that a federal court had no jurisdiction to award custody of an infant under the federal habeas corpus laws. Again, the court disclaimed jurisdiction over domestic relations, noting that the "whole subject of domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Id.* at 593–94. *See also Ohio ex rel. Popovici v. Agler*, 280 U.S. 379, 383, 50 S. Ct. 154, 74 L. Ed. 489 (1930) (noting that it "has been unquestioned for three quarters of a century that the courts of the United States have no jurisdiction over divorce").

More recently, the Supreme Court has reemphasized the exception's viability. "[T]he domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees. Given the long passage of time without any expression of congressional dissatisfaction, we have no trouble today reaffirming the validity of the exception as it pertains to

divorce and alimony decrees and child custody orders." *Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S. Ct. 2206, 119 L. Ed. 2d 468, (1992) (White, J.). This doctrine derives from the jurisdictional statutes. "The domestic relations exception is not a prudential limitation on our federal jurisdiction. It is a limiting construction of the statute defining federal diversity jurisdiction." *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 20–21, 124 S. Ct. 2301, 159 L. Ed. 2d 98 (2004) (Rehnquist, C.J. concurring), *reh'g denied*, 542 U.S. 961, 125 S. Ct. 21, 159 L. Ed. 2d 851 (2004), *abrogated by Lexmark Int'l. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014). This circuit has followed *Ankenbrandt*. See, e.g., *Hamilton v. Hamilton-Grinols*, 363 Fed. Appx. 767, 769 (2d Cir. 2010) (per curiam) ("Under this exception, federal courts are divested of jurisdiction in 'cases involving the issuance of a divorce, alimony, or child custody decree,' . . . and should further abstain from exercising jurisdiction over cases 'on the verge' of being matrimonial in nature.") (citing *Ankenbrandt*, supra, 504 U.S. at 704; *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) (per curiam)).

Although it is true that the doctrine ought to be construed narrowly; *Marshall v. Marshall*, 547 U.S. 293, 126 S. Ct. 1735, 164 L. Ed. 2d 480 (2006) (Ginsburg, J.); it nevertheless is also true that this matter falls squarely within the ken of the exception, which applies where the requested relief would "disturb[] or affect[] the possession of property in the custody of a state court." *Id.* at 311 (citing *Markham v. Allen*, 326 U.S. 490, 494, 66 S. Ct. 296, 90 L. Ed. 256 (1946)); *see also Ankenbrandt*, supra, 504 U.S. at 701–702 ("[t]he *Barber* Court [] did not intend to strip the federal courts of authority to hear cases arising from the domestic relations of persons unless they seek the granting or modification of a divorce or alimony decree").

This matter plainly involves the kind of domestic relations envisioned by the Supreme Court. The disposition of a marital asset is a mixed question of fact and law falling squarely within

the ambit of the Connecticut Superior Court. Conn. Gen. Stat. § 46b-42 ("[t]he Superior Court

shall have exclusive jurisdiction of all complaints seeking a decree of annulment, dissolution of a

marriage or legal separation");

> At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either spouse all or any part of the estate of the other spouse. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either spouse, when in the judgment of the court it is the proper mode to carry the decree into effect.

Gen. Stat. § 46b-81.

Connecticut courts have made it clear that the disposition of marital assets is inextricable

from its mandate to issue a decree of annulment, dissolution or separation: "The rendering of a

judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which

may be dependent on the other." *Ehrenkranz v. Ehrenkranz*, 2 Conn. App. 416, 424, 479 A.2d 826

(Conn. App. 1984). And indeed, the disposition of one marital asset, especially a valuable one,

ordinarily is not legally severable from the disposition of others. "Financial orders in dissolution

proceedings [have been characterized] as resembling a mosaic, in which all the various financial

components are carefully interwoven with one another." (Internal quotation marks omitted;

modification in original.) *Moyher v. Moyher*, 198 Conn. App. 334, 343–44 (Conn. App. 2020)

(citing *Merk-Gould v. Gould*, 184 Conn. App. 512, 523, 195 A.3d 458 (Conn. App. 2018). As far

as the Connecticut Superior Court is concerned, this mosaic theory is "rock solid Connecticut law."

*Wendt v. Wendt*, Superior Court, judicial district of Stamford-Norwalk, No. FA96-0149562-S,

1998 WL 161165, at *46 (Mar. 31, 1998) (Tierney, J.).

Moreover, the disposition of marital property is, for the purposes of the jurisdictional

exception, inherently "matrimonial in nature." *See, e.g.*, *Hamilton*, supra, 363 Fed. Appx. at 769

(request to have court remove name from loans grounded in order for support and judgment of

divorce was "matrimonial in nature" and best left to "greater interest and expertise of state courts in this field" because the order and judgment "assign[] responsibility for outstanding loans and debts, distribute marital property and provide for child custody arrangements and child support'") (citing *McLaughlin v. Cotner*, 193 F.3d 410, 413–14 (6th Cir. 1999)). Under Connecticut law, this is true even when the distribution is made by mutual agreement. *Weiss v. Weiss*, 375 F. Supp. 2d 10 (D. Conn. 2005) (breach of contract claims relating to separation agreement subject to exception; parties' agreement to distribute assets accordingly became part of divorce decree).

Further, application of the exception fulfills the policy reasons giving rise to the doctrine in the first place. These include not only judicial economy and proficiency rationalizations, but also practical concerns; the Court in *Ankenbrandt* explained that the issuance of divorce, alimony, and child custody decrees often require a court to retain jurisdiction past a case's completion and appoint social workers to ensure compliance. *Id.* at 703–704. In such cases, the rationale is particularly acute given that state courts have a closer relationship with the relevant state agencies. *Id.* at 704. Moreover, where a court already exercises control over property, it makes little sense for another court to usurp such control. Compare *Jones v. Brennan*, 465 F.3d 304, 307 (7th Cir. 2006) (Posner, J.) ("[P]roceedings . . . involving child custody and probate administration, are *in rem* in character—*they are fights over a thing of value that is in the court's control—and another court should not try to elbow its way into the fight*." [Emphasis added.])

The Connecticut court assumed jurisdiction and has been exercising control over the parties' assets since the divorce proceedings were instituted in December of 2018. All three of Mochary's claims in this case concern a specific personal property asset, the Collage. Indeed, allegations of replevin, conversion, and civil theft all assume possession of the property, and claim

that such possession is unlawful. Even to the extent that Mochary claims the Collage is not marital property, this question too is the exclusive province of the Connecticut Superior Court.

Whether the Collage is a marital asset is for the Connecticut Superior Court to determine. "There are three stages of analysis regarding the equitable distribution of each resource: *first, whether the resource is property within [Gen. Stat.] § 46b-81 to be equitably distributed (classification)*; second, what is the appropriate method for determining the value of the property (valuation); and third, what is the most equitable distribution of the property between the parties (distribution)." (Emphasis added.) *Bender v. Bender*, 258 Conn. 733, 740, 785 A.2d 197 (2001) (citing *Lopiano v. Lopiano*, 247 Conn. 356, 364, 752 A.2d 1000 (1998), *superseded in part on other grounds by statute as stated in Presidential Village, LLC v. Phillips*, 325 Conn. 394, 416 n.18, 158 A.3d 772 (2017)). Thus, Mochary's claims belong in the Connecticut Superior Court—if they belong anywhere at all—since the allegations essentially amount to a conclusory claim that "the collage is not marital property after all." More to the point, with respect to such questions, "[t]rial courts are empowered to deal broadly with property and its equitable division incident to dissolution proceedings." (Internal quotation marks omitted.) *Jewett v. Jewett*, 265 Conn. 669, 682, 830 A.2d 193 (2003). *See, e.g., Cottrell v. Cottrell*, 133 Conn. App. 52, 33 A.3d 839 (2012) (trial court's inclusion of real property in marital estate was not clearly erroneous even though defendant testified that his father owned the property where defendant continued to use property, had fraudulently conveyed interests in other properties to prevent plaintiff from acquiring her equitable share in dissolution judgment); *see also Mickey v. Mickey*, 292 Conn. 597, 625, 974 A.2d 641 (2009) ("[P]resently enforceable rights, based on either property or contract principles, are sufficient to cause property to be divisible. . . . [T]here is a spectrum of interests that do not fit comfortable into our traditional scheme and yet should be available in equity for courts to

distribute."); compare *Commodity Futures Trading Com'n v. Walsh*, 618 F.3d 218 (2d Cir. 2010) ("the term 'marital property' is to be construed broadly [under New York law] . . . and the law favors the inclusion of property within the marital estate").

Thus, the policy that Judge Posner contemplated applies: this dispute ultimately is a fight over a marital asset of value in the Connecticut Superior Court's control; this court should not elbow its way in. Put simply, this court lacks jurisdiction to resolve the disposition of a marital asset and should dismiss this matter accordingly. To intervene in a question most properly and readily answered by Connecticut's state courts would be judicially unwise and inappropriate.

### C. Even if the exception to jurisdiction does not apply, federal courts ought to abstain from interfering in pending domestic relations matters.

Despite the clear legal exception to jurisdiction, if this Court finds it has jurisdiction and that Mochary has stated a claim upon which relief can be granted, it nevertheless should grant this motion to dismiss on the basis of the abstention doctrine. *See Deem v. DiMella-Deem*, 941 F.3d 618 (2d Cir. 2019) (holding that although domestic relations exception doctrine did not apply, domestic relations abstention doctrine did); *see also In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 708 (2d Cir. 1995) ("[T]he abstention provisions implicate the question whether the . . . court should exercise jurisdiction, not whether the court has jurisdiction in the first instance. . . . The act of abstaining presumes that proper jurisdiction otherwise exists.").

For the reasons previously discussed, the claims in this case are "on the verge of being matrimonial in nature" and "there is no obstacle to their full and fair determination in state courts." (Internal quotation marks omitted.) *American Airlines*, supra, 905 F.2d at 14. Put simply, Mochary is claiming that a tort was committed because Bergstein ceased to be entitled (*i.e.*, had a property right) to the Collage. But the question of that property right is inextricable from the question whether the Collage is in the marital estate. Compare *Weiss*, supra, 375 F. Supp. 2d at 17 ("Plaintiff

may not succeed on her tort claims if she was not actually entitled . . . to disclosure of, or fees

from, the disputed worker's compensation cases. In other words, if plaintiff had no contractual

entitlement, defendant committed no fraud, breach of fiduciary duty, or theft.") Accordingly,

following the Second Circuit's recent holding in *Deem*, this court should dismiss Mochary's claims

on abstention grounds. In that case, the plaintiff asserted various claims (42 U.S.C. §§ 1983, 1985;

conspiracy; malicious prosecution; violation of his right to associate with his children) against his

wife, their marriage counselor, a New York judge, and several others involved in the proceedings.

The Second Circuit affirmed the dismissal of the matter on the ground that the claims "are, or are

on the verge of being, about child custody" and that Deem "alleged no facts indicating that there

is any 'obstacle to [a] full and fair determination [of his child custody issues] in state courts.'"

*Deem*, supra, 941 F.3d 620.

Given the clear understanding of Connecticut's state courts that the disposition of an asset

is necessarily an essential part and the exclusive province of the Connecticut Superior Court,

federal courts have found a number of monetary or possessory claims to be "on the verge of being

matrimonial in nature." *See, e.g., American Airlines*, supra, 905 F.2d 12 (claims by former wife

against husband's employer seeking to garnish wages subject in part to domestic relations

abstention); *Gonzalez Caevero v. Rexach*, 793 F.2d 417, 418–19 (1st Cir. 1986) (domestic relations

exception applied to suit for money damages or partition order relating to half interest in

corporation controlled by ex-husband); *Csibi v. Fustos*, 670 F.2d 134, 138 (9th Cir. 1982)

(domestic relations exception prevented exercise of jurisdiction over action seeking to establish

rights between two women claiming to be intestate's surviving spouse); *see also Williams v. NYU

Hospital Center Finance & Payroll Support*, No. 19-CV-11612 (LLS), 2020 WL 1878119

(S.D.N.Y. Apr. 14, 2020) (claims against employer regarding garnishment of wages subject to domestic relations abstention).

### D. Similarly, the court should abstain under the *Younger* and *Colorado River* doctrines.

Even if this court declines to abstain under the domestic relations principles clearly set forth by the Second Circuit, abstention under the *Younger* and *Colorado River* doctrines would be appropriate. *Younger* abstention generally prohibits federal courts from granting relief that interferes with pending state criminal prosecutions, or with pending state civil proceedings that implicate important state interests. *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971); *see also Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987) (federal court may not interfere with enforcement of state civil judgment); *Moore v. Sims*, 442 U.S. 415, 99 S. Ct. 2371, 60 L. Ed. 2d 994 (1979) (child abuse proceedings); *Trainor v. Hernandez*, 431 U.S. 434, 97 S. Ct. 1911, 52 L. Ed. 2d 486 (1977) (attachment of welfare benefits allegedly obtained by fraud); *Juidice v. Vail*, 430 U.S. 327, 97 S. Ct. 1211, 51 L. Ed. 2d 376 (1977) (civil contempt proceeding); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S. Ct. 1200, 43 L. Ed. 2d 482 (1975) (quasi-criminal nuisance proceeding to enjoin allegedly obscene movie). The Younger doctrine "espouse[s] a strong federal policy against federal-court interference with pending state judicial proceedings." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982). The doctrine is based primarily on principles of federalism that require federal court non-interference with state judicial proceedings. In *Samuels v. Mackell*, 401 U.S. 66, 91 S. Ct. 764, 27 L. Ed. 2d 688 (1971), the Court broadened *Younger's* reach, holding that the doctrine encompasses claims for declaratory relief. Similarly, in a series of decisions beginning with *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S. Ct. 1200, 43 L. Ed. 2d 482 (1975). The Supreme Court extended the application of *Younger* to bar federal interference with

various state civil proceedings implicating important state interests. In *Huffman*, the Court noted that the state court civil nuisance proceeding at issue was in important respects "more akin to a criminal prosecution than are most civil cases," because the state was a party to the proceeding, and the proceeding itself was in aid of and closely related to criminal statutes. *Id.* at 604. In *Moore* v. *Sims*, supra, 442 U.S. at 423, the Court treated the case as governed by *Huffman* because the state was a party to the state proceedings in question, and the temporary removal of a child in a child abuse context was in aid of and closely related to enforcement of criminal statutes.

The Second Circuit has held that "abstention is *mandatory* where: 1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in the state court. . . . Although the *Younger* doctrine was originally formulated in the context of criminal proceedings, it now applies with equal force to civil proceedings . . . ." (Citations omitted; emphasis added; internal quotation marks omitted). *Parent v. New York*, 485 Fed. Appx. 500 (2d Cir. 2012).

This case falls within the same realm because the underlying marital dissolution case is still pending (indeed, it preexisted the current replevin action) and because the claims at issue here, as previously discussed, necessarily involve the resolution of domestic relations matters; *see Elk Grove*, supra, 542 U.S. at 12–13 ("'[T]he *whole subject* of domestic relations of husband and wife . . . belongs to the laws of the States and not to the laws of the United States'" (citation omitted; emphasis added)); and Mochary has failed to demonstrate in any way that the state courts are an inadequate forum for resolving the question whether a certain asset is marital property. Mochary's tort claims do not outweigh the strong state interest in resolving the domestic relations question at issue. *Sargent v. Emons*, No. 3:13cv863(JBA), 2013 WL 6407718 at *5 (D. Conn. Dec. 9, 2013) (abstaining under *Younger* from claim for injunction against taking action in pending family

{N5717188;5}                                                              14

matter, noting among other things that "courts apply the *Younger* abstention doctrine even in cases where the plaintiffs claim due process violations, and thus the Plaintiff's important constitutional interest in this case *does not diminish the state's interest in adjudicating cases involving domestic relations*" (emphasis added)).

Moreover, under *Colorado River* abstention; *see Colorado River Water Conservation District* v. *United States*, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976); a federal court may abstain when there is a "parallel" concurrent proceeding pending in state court. However, even when a "parallel" state court proceeding is pending, a federal court should invoke *Colorado River* abstention only in "exceptional circumstances." The federal court's task "is not to find some substantial reason for the exercise of federal jurisdiction," *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.,* 460 U.S. 1, 25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983), but to determine whether exceptional circumstances "justify the surrender of that jurisdiction." *Id.* at 26. In *Colorado River*, the federal government brought suit in federal court seeking an adjudication of certain water rights. Soon thereafter, a defendant in the federal suit moved to join the United States in a state court proceeding adjudicating the same water rights. The federal district court subsequently dismissed the suit, abstaining in deference to the state court proceedings. *Id.* at 806. Although the Supreme Court found that *Pullman*, *Burford*, and *Younger* abstentions did not apply to the facts of this case, because the federal suit did not involve federal-state comity or avoidance of constitutional issues, it held that dismissal was proper on another ground, namely, "on considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* at 813–17. The Court in *Colorado River* set forth the general rule that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.*

It recognized, however, that exceptional circumstances might permit dismissal of a federal suit because of concurrent state court proceedings; the Court identified four factors to be considered in determining whether such exceptional circumstances exist: (1) the problems created by two courts exercising concurrent jurisdiction over a res; (2) the relative inconvenience of the federal forum; (3) the goal of avoiding piecemeal litigation; and (4) the order in which the state and federal forums obtained jurisdiction. *Id.*

Applying those factors here, it is clear that this court should abstain from resolving Mochary's claim as to a single asset that is or ought to be a piece of the Bergstein's marital estate. The Connecticut Superior Court is well-equipped to handle, and conveniently already has jurisdiction over, the marital estate and the assets which comprise it. More to the point, this collateral challenge to a valuable component of the marital estate by a family member rises to the level of an "exceptional circumstance" meriting outright dismissal.

**E.  If this Court chooses to retain jurisdiction, it should stay these proceedings to avoid duplication of efforts and the possibility of inconsistent rulings.**

Should this Court decide that issues involving the determination and allocation of marital property neither deprive it of diversity jurisdiction nor warrant abstention, the Court should nonetheless strongly consider staying the proceedings until such time as the Connecticut State Court has made its property determinations.

In a case cited favorably by the Second Circuit in *Deem v. DiMella-Deem*, 941 F.3d 618, 624 (2d Cir. 2019), the First Circuit held in *DeMauro v. DeMauro*, 115 F.3d 94 (1st Cir. 1997) that a stay was appropriate in matters that might interfere with a state court's decision as to how to divide property in a divorce. The *DeMauro* court was faced with a RICO action instituted by a divorcing wife seeking to challenge certain asset transfers by her husband. The court recognized

that claim was directed to the same property that was going to be allocated between the parties as

a result of the divorce decree and noted:

> [a]t the very least, there is a possibility of conflict between the judgments, requiring
> one of them to be modified to take account of the other. Otherwise, the state divorce
> decree's intended allocation of property could easily be frustrated.

*DeMauro*, 115 F.3d at 99. Citing *Ankenbrandt*, *supra*, the court recognized that "[n]ot only

divorce, but the allocation of property incident to a divorce, are longstanding functions governed

by state law." *Id*.

Finding that the case before it did not rise to the level of a mechanical application of either

the jurisdictional exception or the application of the domestic relations abstention doctrine such as

to require dismissal, the *DeMauro* court concluded:

> abstention by the use of a stay may be permissible where a RICO action is directed
> against concealment or transfer of property that is the very subject of a pending
> divorce proceeding. The divorce proceedings might or might not resolve the federal
> dispute – there are many possible permutations and plenty of unanswered legal
> questions. But staying the federal RICO claim will reduce the risk of interfering
> with interim state allocations and permit the federal court to tailor any final
> judgment to avoid undermining the divorce court's allocation of property.

*Id*.

The issues presented to the court in *DeMauro* are substantially similar to the instant matter.

The concerns certainly are applicable to both, chiefly the possibility of inconsistent rulings and the

confusion and waste of resources that could ensue. It is possible that both courts could proceed

apace and there would be no inconsistent rulings, but why take such a risk? Abstention by the use

of a stay reduces the risk to almost zero. Given that the parties have placed the Collage in the hands

of a third party storage facility and have agreed that it will be released only upon an order of this

Court or of an another court to which this Court has ceded jurisdiction, there is no prejudice to the

plaintiff and the slight delay is a small burden in light of the chaos and confusion that may result from two separate courts adjudicating ownership of the same res.

## IV.   Conclusion

The plaintiff recognizes in his complaint that Bergstein is in the midst of divorce proceedings that were commenced in December of 2018. What Mochary does not take account of, however, is that the question of who owns the Pollack Collage is inextricably intertwined with those very same proceedings. The Collage resided in the marital home since 2016 and was believed by Bergstein to have been a gift, not a loan to his wife. The possibility is very real that the state court which has been adjudicating the divorce for the last two (2) years will find that it is statutorily bound to determine whether the Collage is part of the marital estate and, if so, its disposition.

Accordingly, this Court has every reason to allow the Connecticut Superior Court to continue in its duty unabated. The determination of marital assets is such a core domestic relations function that it arguably falls within the exception to this Court's diversity jurisdiction. Even where the exception does not apply and jurisdiction has been found, however, federal courts have recognized for more than a century that such subject matter is best left to the state courts and have opted for abstention.

Considering Mochary's request for this Court to enter this dispute comes two years after his sister filed for divorce from Bergstein, and that the parties have ensured that the Collage will remain safe and undamaged during the pendency of the divorce, there is no reason to chance the confusion, waste of resources and possibility of conflicting judgments that could result from two separate courts attempting to adjudicate ownership and disposition of the same property. At the very least, it is both within this Court's ability and a reasonable exercise of its discretion to stay

these proceedings pending the state family court's rulings and thereby avoid the ills this action portends.

**WHEREFORE,** Bergstein respectfully requests that this Court find that the subject matter of this action is either within the exception to diversity jurisdiction or requires abstention under the domestic relations doctrine and dismiss it, or, in the alternative, stay this action pending the decision of the Connecticut Superior Court as to determination and division of the Bergsteins' marital assets.

**DEFENDANT SETH BERGSTEIN**

By:   /s/ Howard K. Levine
      Howard K. Levine (ct10555)
      **Carmody Torrance Sandak & Hennessey LLP**
      195 Church Street, 18th Floor
      P.O. Box 1950
      New Haven, CT 06509-1950
      Telephone: (203) 777-5501
      Facsimile:  (203) 784-3199
      Email:  hlevine@carmodylaw.com

      Peter M. Nolin (ct06223)
      **Carmody Torrance Sandak & Hennessey LLP**
      707 Summer Street
      Stamford, Connecticut 06901-1026
      Telephone: (203) 252-2683
      Facsimile: (203) 325-8608
      Cell: (203) 856-6135
      E-mail:  pnolin@carmodylaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 23, 2020 a copy of the foregoing **Memorandum in Support of Motion to Dismiss** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Howard K. Levine
Howard K. Levine