UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MATTHEW MOCHARY,
    *Plaintiff,*

v.

SETH BERGSTEIN,
    *Defendants.*

No. 3:20-cv-01034 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS**

Matthew Mochary ("Plaintiff") has filed a lawsuit against Seth Bergstein ("Defendant") alleging three (3) counts against Mr. Bergstein: (1) replevin, under Connecticut General Statute § 52-515; (2) conversion; and (3) statutory theft, under Connecticut General Statute § 52-564. Compl., ECF No. 1, ¶¶ 30–47 (July 22, 2020).

For the reasons stated below, Defendant's motion to dismiss is **GRANTED** without prejudice to renewal, following the resolution of the related property issue in state court.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    **A.  Factual Allegations**

This case centers around a collage allegedly "created by Jackson Pollack in 1943" (the "Collage"). *Id.* ¶ 6. "[Mr.] Mochary's mother, Mary Mochary, [allegedly] purchased the Collage in 1978." *Id.* ¶ 8. In or around 1996, Mary Mochary allegedly "began annually gifting to [her son, Matthew Mochary] fractional shares of ownership of the Collage." *Id.* ¶ 10. "Through the annual gifts," Mr. Mochary allegedly "has had complete ownership [of the Collage] since 2012." *Id.* ¶ 11. "From [around] 1978 to 2004, the Collage was [allegedly] displayed in Mary Mochary's home" and allegedly was "periodically loaned to museums for exhibition." *Id.* ¶ 12. From around

2004 to 2016, the Collage was loaned to museums in Austria, Arizona, Oklahoma, and Florida. *Id.* ¶ 14.

Around 2016, "the Collage was [allegedly] loaned to [Mr.] Bergstein's wife . . . to be displayed at their house at 541 Lake Avenue in Greenwich, [Connecticut]" allegedly under "the conditions that [the Collage] be insured, properly cared for and maintained, and immediately returned upon request." *Id.* ¶ 15. The Collage allegedly "remained [at] 541 Lake Avenue" from 2016 until the filing of this Complaint. *Id.* ¶ 16.

Around 2019, Mr. Bergstein's wife[1] allegedly "commenced a divorce action against [Mr.] Bergstein in the Connecticut Superior Court . . . and [allegedly] no longer resides at 541 Lake Avenue." *Id.* ¶¶ 17–18. Mr. Bergstein allegedly "still resides at 541 Lake Avenue" and, at the time of filing this Complaint, Mr. Bergstein was allegedly "in sole possession of the Collage." *Id.* ¶ 19. On or around "May 4, 2020, [Mr.] Mochary notified [Mr.] Bergstein that [Mr.] Mochary was the owner of the Collage and demanded that he be allowed to retrieve [it]." *Id.* ¶ 26. Mr. Bergstein was allegedly unresponsive and unwilling to cooperate. *Id.* ¶ 27. At the time of the filing of this Complaint, "[Mr.] Bergstein [allegedly] ha[d] not returned the Collage to [Mr.] Mochary." *Id.* ¶ 28.[2]

---

[1] While not mentioned in the Complaint, Mr. Bergstein's wife is also the sister of the plaintiff in this action. *See* Mem. in Supp. of Def. Seth Bergstein's Mot. to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted or, in the Alt., for Stay of Proceedings, ECF No. 21-1 (Oct. 23, 2020) ("Def. Mem."); *see also* Mem. of L. in Opp'n to Mot. to Dismiss, ECF No. 24 (Dec. 11, 2020) ("Pl. Opp'n").

[2] The Court notes that since the filing of Mr. Mochary's Complaint the parties have stipulated to the removal of the Collage from 541 Lake Avenue, Greenwich, Connecticut. *See* Stipulation, ECF No. 17 (Aug. 20, 2020) (the "Stipulation"); *see also* Def. Mem. at 4 ("Since the filing of the instant action, the parties have reached a stipulation that preserves and protects the Collage, providing therein that it remain at a third party art storage facility 'during the pendency of this litigation and/or until ownership of the Collage is adjudicated by this Court, or such other Connecticut court as designated by this Court.' The parties have stipulated further that the Collage will not be moved from storage absent an order of this Court or such other Connecticut Court as designated by this Court." (internal citations omitted)).

**B. Procedural History**

On July 22, 2020, Mr. Mochary filed his Complaint against Mr. Bergstein. Compl.

On the same day, Mr. Mochary filed a motion for a temporary restraining order. Pl.'s Ex Parte Application for TRO and Prelim. Inj., ECF No. 2 (July 22, 2020).

On August 4, 2020, this Court held a telephonic status conference with both parties. Min. Entry, ECF No. 15 (Aug. 4, 2020).

On August 20, 2020, Mr. Mochary filed a stipulation between the parties on the care of the Collage during the pendency of this case. Stipulation.

On August 21, 2020, the Court issued an Order, which, in light of the Stipulation, denied as moot Mr. Mochary's motion for a temporary restraining order. Order, ECF No. 18 (Aug. 21, 2020).

On October 23, 2020, Mr. Bergstein filed a motion to dismiss this case. Def. Seth Bergstein's Mot. to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted or in the Alt., for Stay of Proceedings, ECF No. 21 (Oct. 23, 2020); Def. Mem.

On December 11, 2020, Mr. Mochary filed an opposition to Mr. Bergstein's motion to dismiss. Pl. Opp'n.

On December 21, 2020, Mr. Bergstein filed a reply to Mr. Mochary's opposition to his motion to dismiss. Def. Seth Bergstein's Reply to Pl. Matthew Mochary's Obj. to the Def.'s Mot. to Dismiss or Stay of Proceeding, ECF No. 25 (Dec. 21, 2020) ("Def. Reply").

On June 29, 2021, Mr. Bergstein filed a motion for continuance. Def. Seth Bergstein's Mot. for Continuance of July 28, 2021 Mot. Hr'g Regarding Def.'s Mot. to Dismiss, ECF No. 27 (June 29, 2021).

On July 6, 2021, Mr. Mochary filed an objection to Mr. Bergstein's motion for continuance. Obj. to Def.'s Mot. for Continuance, ECF No. 28 (July 6, 2021).

On July 8, 2021, the Court ordered any reply to the objection to the motion for continuance to be filed by July 14, 2021. Order, ECF No. 29 (July 8, 2021).

On July 23, 2021, Mr. Bergstein filed a notice regarding his divorce proceedings in the Connecticut Superior Court. Notice of Suppl. Developments Affecting Def.'s Mot. for Continuance Dated June 29, 2021, ECF No. 30 (July 23, 2021).

On July 28, 2021, the Court held a motion hearing via video-conference regarding the pending motion to dismiss. Min. Entry, ECF No. 32 (Aug. 4, 2021).

## II.   STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible."

*Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), a court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. A court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.")).

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court also may consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### III. DISCUSSION

Asserting diversity jurisdiction, Mr. Mochary has brought forth three (3) counts against Mr. Bergstein: (1) replevin, under Connecticut General Statute § 52-515; (2) conversion[3]; and (3) statutory theft, under Connecticut General Statute § 52-564. Compl. ¶¶ 30–47.

The Court need only address its jurisdiction over this dispute.

#### A. Diversity Jurisdiction

District courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Complete diversity between all parties is required for a federal court to exercise diversity jurisdiction over a matter. *E.R. Squibbs & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998).

An individual person may generally only have one domicile: an individual's "true, fixed[,] and permanent home and place of habitation," defined as "the place to which, whenever he is absent, he has the intention of returning." *Martinez v. Bynum*, 461 U.S. 321, 331 (1983). The Court evaluates the parties' domiciles at the moment that a plaintiff filed the complaint. *See Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 63 (2d Cir. 2009) ("[I]t must be determined whether at the time the present action was commenced there was diversity jurisdiction.").

Mr. Mochary is a "citizen of the State of California," Compl. ¶ 2; Mr. Bergstein is a "citizen of the State of Connecticut," *id.* ¶ 3; and at the time of filing Mr. Mochary's Complaint, the Collage allegedly "ha[d] an approximate fair market value of $175,000.00," *id.* ¶ 7.

---

[3] Mr. Mochary does not provide a statute for this common law tort.

Accordingly, the Court agrees that there is complete diversity and the amount in controversy is sufficient for diversity jurisdiction.

### B. The Domestic Relations Exception

Still, "[f]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted). Under the "domestic relations exception," federal courts have no "power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) ("We conclude, therefore, that the domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees."). When assessing a parent's visitation rights, the Eastern District of New York found, that

> [alt]hough the domestic relations doctrine has been narrowly construed, covering only matrimonial actions, i.e., cases on the subjects of divorce, alimony, or the custody of children, a number of courts have recognized that federal courts should nevertheless abstain from exercising jurisdiction when issues are "on the verge" of being matrimonial in nature if full and fair adjudication is available in state courts. Abstention is particularly urged for cases concerning visitation rights.

*Lomtevas v. Cardozo*, No. 05-CV-2779 (DLI) (LB), 2006 WL 229908, at *3 (E.D.N.Y. Jan. 31, 2006) (internal quotation marks omitted) (citing *Williams v. Lambert*, 46 F.3d 1275, 1283 (2d Cir. 1995); *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990)).

Mr. Bergstein argues that "[a]lthough . . . the doctrine ought to be construed narrowly[,] . . . this matter falls squarely within . . . the exception" because "the requested relief would disturb or affect the possession of property in the custody of a state court." Def. Mem. at 7 (internal quotation marks, alterations, and citation omitted). Mr. Bergstein argues that "[t]he

7

disposition of a marital asset is a mixed question of fact and law falling squarely within the ambit of the Connecticut Superior Court." *Id.* at 7–8 (citing Conn. Gen. Stat. § 46b-42 ("[t]he Superior Courts shall have exclusive jurisdiction of all complaints seeking a decree of annulment, dissolution of a marriage or legal separation")). He argues that "the disposition of marital property is, for the purposes of the jurisdictional exception, inherently matrimonial in nature." *Id.* at 8 (internal citation omitted). According to Mr. Bergstein, "[w]hether the Collage is a marital asset is for the Connecticut Superior Court to determine." *Id.* at 10.

Mr. Bergstein also argues that "the claims in this case are on the verge of being matrimonial in nature and there is no obstacle to their full and fair determination in state courts." *Id.* (internal citation and quotation marks omitted). He alleges that "[Mr.] Mochary is claiming that a tort was committed because [Mr.] Bergstein ceased to be entitled (i.e., had a property right) to the Collage. But the question of that property right is inextricable from the question [of] whether the Collage is in the marital estate." *Id.*

Mr. Mochary argues that the domestic relations exception "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." Pl. Opp'n at 5 (quoting *Ankenbrandt*, 504 U.S. at 704). He argues that "Courts have [] refused to apply the domestic relations exception where no party seeks the issuance or enforcement of a divorce, alimony, or child custody decree." *Id.* at 5–6 (citing *King v. Comm'r & New York City Police Dep't*, 60 F. App'x 873, 875 (2d Cir. 2003) (summary order) ("[E]ven under the broadest interpretation of the exception, it applies only to cases that seek issuance or modification of divorce, alimony, or child custody decrees."); *Collins v. Landau*, No. 3:10-CV-588 (JBA), 2010 WL 5069907, at *4 (D. Conn. Dec. 3, 2010) ("[A]lthough Plaintiff's breach-of-contract action arises in the context of a

state domestic-relations action, it does not directly involve issuance of a divorce, alimony, or child custody decree.")).

Mr. Mochary repeatedly asserts that "[he] is not suing his spouse or ex-spouse and his claims do not arise from any matrimonial obligation, such as a divorce, alimony, or child support decree." Pl. Opp'n at t 10. He argues that "[t]he only thing 'matrimonial in nature' about this case is that the person wrongfully detaining [his] property . . . happens to be undergoing divorce proceedings." *Id.* Mr. Mochary further argues that "in addition to the fact that [he] and [Mr.] Bergstein are not former spouses, the domestic relations exception does not apply to [Mr.] Mochary's claims for replevin, conversion, and statutory theft, which cannot and will not be resolved in [Mr.] Bergstein's divorce proceedings." *Id.* at 11.

Mr. Mochary argues that "this matter is not 'on the verge' of being matrimonial in nature because [his] claims of replevin, conversion, and statutory theft do not require the Court to interpret Connecticut's domestic relations law, to intrude impermissibly upon the Superior Court's matrimonial jurisdiction, or to immerse itself in domestic relations matters." *Id.* at 17.

The Court agrees.

Both parties acknowledge that the domestic relations exception has been applied specifically to disputes between the parties directly involved in "divorce, alimony, and child custody." *See* Def. Mem. at 5–12; Pl. Opp'n at 5–13. Neither party has offered caselaw demonstrating that either the domestic relations exception or the "on the verge" of matrimonial determination have been, or can be, applied to disputes between parties not directly involved in the divorce, alimony, and child custody. *See* Def. Mem; Def. Reply; Pl. Opp'n. For the reasons set forth below, the Court, however, declines to adjudicate this dispute now.

Accordingly, the Court will not dismiss this case under the domestic relations exception.

9

### C. *Younger* and *Colorado River* Abstentions

Alternatively, Mr. Bergstein argues that the Court dismiss the Complaint "on the basis of the abstention doctrine." Def. Mem. at 11.

"Abstention is a narrow exception to the generally broad duty of federal courts to exercise jurisdiction." *Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus*, 60 F.3d 122, 126 (2d Cir. 1995). The Second Circuit has found that "[t]here is little, if any, discretion to abstain in a case which does not meet the requirements of a particular abstention principle." *Id.*

In *Colorado River*, the Supreme Court held that it may be appropriate in some cases for courts to abstain from deciding cases "in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). "[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*." *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998). However, "[t]he mere fact of concurrent state and federal proceedings 'does not, without more, warrant staying exercise of federal jurisdiction.'" *Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 602 (2d Cir. 1988) (quoting *Colorado River*, 424 U.S. at 816). In order for concurrent proceedings to be considered parallel, "[p]erfect symmetry of parties and issues is not required. Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 20 (E.D.N.Y. 2014) (internal citations omitted) (quoting *In re Comverse Tech., Inc.*, No. 06–CV–1849 (NGG) (RER), 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006).

Under *Younger v. Harris*, 401 U.S. 37 (1971) abstention is proper when: "(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3)

10

the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002).

Mr. Bergstein argues that "[e]ven if this [C]ourt declines to abstain under the domestic relations principles clearly set forth by the Second Circuit, abstention under the *Younger* and *Colorado River* doctrines would be appropriate." Def. Mem. at 13. Mr. Bergstein argues that "[t]he *Younger* doctrine 'espouse[s] a strong federal policy against federal-court interference with pending state judicial proceedings.'" *Id.* (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982)).

Mr. Bergstein argues that "the underlying marital dissolution case is still pending" and its resolution is necessary for the adjudication of Mr. Mochary's claims. *Id.* at 14. Mr. Bergstein further argues that "[Mr.] Mochary has failed to demonstrate in any way that the state courts are an inadequate forum for resolving the question whether a certain asset is marital property," and that "[his] tort claims do not outweigh the strong state interest in resolving the domestic relations question at issue." *Id.*

Mr. Bergstein argues that "under *Colorado River* abstention . . . a federal court may abstain when there is a 'parallel' concurrent proceeding pending in state court," while still acknowledging the Second Circuit's explanation that "even when a 'parallel' state court proceeding is pending, a federal court should invoke *Colorado River* abstention only in 'exceptional circumstances.'" *Id.* at 15 (internal citation omitted). He argues that "[t]he federal court's task is not to find some substantial reason for the exercise of federal jurisdiction, but to determine whether exceptional circumstances justify the surrender of that jurisdiction." *Id.* at 15

(internal quotation marks and citation omitted) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983)).

Mr. Bergstein argues that in

> *Colorado River*, . . . the Court identified four factors to be considered in determining whether [] exceptional circumstances exist: (1) the problems created by two courts exercising concurrent jurisdiction over a res; (2) the relative inconvenience of the federal forum; (3) the goal of avoiding piecemeal litigation; and (4) the order in which the state and federal forums obtained jurisdiction.

*Id.* at 15–16. According to Mr. Bergstein abstention is appropriate in this case, because "the Connecticut Superior Court is well-equipped to handle, and conveniently already has jurisdiction over, the marital estate and the assets which comprise it," and he argues that Mr. Mochary's claims constitute a "collateral challenge to a valuable component of the marital estate by a family member[,]" which "rises to the level of an 'exceptional circumstance' meriting outright dismissal." *Id.*

Mr. Mochary argues that "[Mr.] Bergstein's position would mean that federal courts must always abstain under *Younger* when one of the parties is also involved in divorce proceedings and the resolution of the claims in the federal action would impact, in any way, the property owned by the party in the divorce action." Pl. Opp'n at 25. He argues that "[w]hen the federal plaintiff is not a party to the relevant state court action, courts have generally refused to apply *Younger* abstention." *Id.* at 22 (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 930–31 (1975) (*Younger* abstention did not apply to two of the three plaintiffs because, although there was a state prosecution against the third plaintiff, the other two plaintiffs were not parties in that prosecution and no state proceedings were pending against either of the two other plaintiffs at the time the District Court issued its preliminary injunction. (internal quotation marks and citations omitted))).

12

According to Mr. Mochary, "no party to the divorce proceedings has similar interests to [him] and . . . the Superior Court will not be adjudicating [his] claims in the divorce proceedings." *Id.* at 23. Mr. Mochary argues that "[e]xercising jurisdiction over the tort claims, even though the claims arose out of a domestic relationship, would not lead to the [C]ourt's intrusion upon state court expertise." *Id.* at 16 (internal alterations and quotation marks omitted) (quoting *Allam v. Meyers*, No. 09-CV-10580 (KMW), 2011 WL 721648, at *5 (S.D.N.Y. Feb. 24, 2011)).

Mr. Mochary argues that "*Colorado River* abstention (like the other abstention doctrines) applies only in exceptional circumstances and only the clearest of justifications will warrant dismissal." *Id.* at 26 (internal quotation marks and citations omitted). He argues that "[f]ederal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." *Id.* at 27 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997)). He further argues that "[a]ny doubt regarding the parallel nature of a federal and state action should be resolved in favor of the exercise of federal jurisdiction." *Ming Hou v. Pat Kwok Lam*, No. 3:16-CV-01592 (VAB), 2017 WL 4316394, at *6 (D. Conn. Sept. 27, 2017) (quoting *In re Comverse Tech., Inc. Derivative Litig.*, No. 06-CV-1849 (NGG) (RER), 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006)). Mr. Mochary argues that the Court should not apply the abstention doctrine because even though "'[p]erfect symmetry of parties and issues is not required,' the proceedings are not parallel unless 'there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case.'" Pl. Opp'n at 27–28 (quoting *Ming Hou*, 2017 WL 4316394, at *5) (quoting *Bethke*, 1 F. Supp. 3d at 20)).

The Court agrees, in part.

The Court agrees with Mr. Mochary that the *Younger* doctrine is ill-suited for this case. Specifically, the facts of this case do not satisfy all of the elements necessary for abstention under *Younger*. While Mr. Bergstein has been able to argue that (1) there is a state proceeding – the divorce action in Connecticut Superior Court, and (2) there is an important state interest – matrimonial matters are of state interest; he does not argue, nor can he, that this dispute involves constitutional claims. *See Stein v. Needle*, No. 3:19-CV-1634-VLB, 2021 WL 1178283, at *5 (D. Conn. Mar. 29, 2021) ("*Younger* abstention is appropriate where '1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in the state court.'" (quoting *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 2009))); *see also McKnight v. Middleton*, 699 F. Supp. 2d 507, 520–21 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011) ("The Court holds that the *Younger* abstention conditions are met . . . [in part because the] [p]laintiff would have 'an adequate opportunity for judicial review of the federal constitutional claims' in state court.")

The Court finds, however, that *Colorado River* abstention is appropriate, here. Because "in assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums." 424 U.S. at 819 (internal citations and quotation marks omitted).

Given that divorce proceedings involving the Collage have already begun, and the Superior Court of Connecticut has exercised jurisdiction over the marital estate, adjudicating Mr. Mochary's claims would interfere with parallel proceedings meant to be avoided. Mr. Mochary's

sister allegedly married the defendant and allegedly was loaned the Collage. *See* Compl. ¶ 15. The Collage allegedly remained in their marital home for several years, and stayed there even after she left the home and filed divorce proceedings. *Id.* ¶¶ 17–18. Currently, Mr. Bergstein and Mr. Mochary's sister are engaged in divorce proceedings, which allegedly will involve the dissolution of assets. Def. Mem. at 1.

If the Superior Court of Connecticut finds the Collage is part of the marital estate, as Mr. Bergstein argues, and not owned by Mr. Mochery, the claims brought forth by Mr. Mochary would become moot. As a result, it is appropriate to exercise discretion and abstain from adjudicating this matter at this time. *See Chittenden v. Connors*, 460 F. Supp. 2d 463, 468 (S.D.N.Y. 2006) ("Abstention is a narrow exception to the generally broad duty on the part of federal courts to exercise jurisdiction.") (citing *Steinhaus,* 60 F.3d at 126); *see also Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

If the Superior Court of Connecticut finds that the Collage is not a marital asset involved in the current divorce proceedings, the Court grants leave for Mr. Mochary to refile his Complaint.

Accordingly, Mr. Bergstein's motion to dismiss will be granted.

## IV.   CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED** without prejudice to renewal, following the resolution of the related property issue in state court.

The Clerk of Court is respectfully directed to close this case, although it may be reopened, consistent with this opinion.

**SO ORDERED** at Bridgeport, Connecticut, this 6th day of August, 2021.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE